## MILLER v. GOOD MARBLE & TILE CO. et al.
### No. 3907.

Court of Civil Appeals of Texas. Texarkana.
April 3, 1931.

Rehearing Denied April 9, 1931.

Hamilton & Hamilton and D. A. Frank, all of Dallas, for appellant.

Peyton A. Ellison, Hoyt A. Armstrong, and Robertson, Robertson & Payne, all of Dallas, for appellees.

LEVY, J.

By its original petition filed January 20, 1928, the Architectural Tile Company, a private corporation, sued the Good Marble & Tile Company, a corporation, and C. R. Miller, to recover against them jointly and severally the sum of $621.27, being the balance claimed to be due and unpaid for tile furnished and used in the building of the house, and to establish and foreclose a materialman's lien upon the house and lot at 5112 Swiss avenue in the city of Dallas. Thereafter on February 15, 1929, the Architectural Tile Company filed its first amended original petition, and by which personal judgment was sought against the Good Marble & Tile Company alone, upon the ground that

**324**

such company was the buyer in the regular course of business of the amount of tile shown in Exhibit A. This amended petition did not set up a lien for the tiling furnished and used in the building.

The Good Marble & Tile Company made answer to the suit of general denial and by way of cross-action sought to recover against the Architectural Tile Company $1,103.65 as damages for the alleged failure to ship and deliver within a reasonable time the tile contracted to be delivered. The Good Marble & Tile Company further, by cross-plea, sought to recover against C. R. Miller, the present appellant, $1,103.65 with interest, as the balance claimed to be due and unpaid upon a contract in writing to pay to the Good Marble & Tile Company the sum of $3,194 for labor and materials in doing the tile work in his residence that was being erected.

C. R. Miller, after plea in abatement and of misjoinder of actions, answered specially denying that he or any one with authority from him ever agreed to pay $3,194 sued for, and specially pleading full accord and satisfaction by payment by check for all tiling furnished in the construction of his home. C. R. Miller further sought by way of cross-action to recover damages alleged to have been occasioned to him through delay in completing and giving possession to him of his residence then being constructed because of the alleged delay on the part of the Good Marble & Tile Company in furnishing the tile necessary to be used in the house.

The Good Marble & Tile Company denied under oath that there was any consideration for the accord and satisfaction or settlement set up by C. R. Miller.

There was a trial before a jury upon special issues, and in keeping with the answers of the jury, the court entered judgment, viz.: (1) In favor of the Architectural Tile Company for the sum sued for with interest of $692.11 against the Good Marble & Tile Company; (2) in favor of the Good Marble & Tile Company for the sum sued for with interest of $1,274.53 against C. R. Miller; (3) denying any recovery to the Good Marble & Tile Company on its cross-action against the Architectural Tile Company; (4) denying any recovery to C. R. Miller on his cross-action for damages against the Good Marble & Tile Company.

The issues submitted, as bearing upon the appeal, were:

"Special Issue No. 1: On April 29, 1927, and prior to the execution of the check introduced in evidence dated April 29, 1927, was there a dispute in good faith between C. R. Miller and Good Marble & Tile Company as to the amount due Good Marble & Tile Company?" Answer by jury: "No."

"Special Issue No. 2: Was the Churchill-Humphreys Company authorized by C. R. Miller to execute for C. R. Miller the instrument introduced in evidence dated November 8, 1926, and signed by Churchill-Humphreys Company on November 18, 1926?" Answer by jury: "Yes."

"Special Issue No. 3: Was Good Marble & Tile Company, its agents and representatives led by the words, act or conduct of C. R. Miller to believe that Churchill-Humphreys Company had authority to execute as the obligation of C. R. Miller the instrument introduced in evidence, dated November 8, 1926, and signed by Churchill-Humphreys Company on November 18, 1926?" Answer by jury: "Yes."

"Special Issue No. 4: Do you find and believe from a preponderance of the evidence that there was an unreasonable delay upon the part of the defendant Good Marble & Tile Company, in the matter of carrying out the tile contract on the C. R. Miller home?" Answer by jury: "No."

"Special Issue No. 6: Did Good Marble & Tile Company comply with their alleged contract in furnishing and installing the kind and character and colors of materials which they agreed to furnish and install in the C. R. Miller home?" Answer by jury: "Yes."

"Special Issue No. 8: Do you find from a preponderance of the evidence that C. R. Miller is entitled to recover from Good Marble & Tile Company the sum of $60.10 incurred in connection with the plumbing job referred to in C. R. Miller's pleading?" Answer by jury: "No."

C. R. Miller appeals from the judgment against him in favor of the Good Marble & Tile Company, claiming that the evidence established without controversy that upon a bona fide dispute of the amount owing for the tiling a complete settlement was made between him and Mr. Good of the Good Marble & Tile Company.

In view of all the evidence it is believed there arises a question of fact for submission to the jury as to whether or not a bona fide dispute existed. 1 Tex. Jur. § 31, p. 272; 1 C. J. p. 554.

In the early fall of 1926, C. R. Miller let a contract to Churchill-Humphreys Company, a corporation, general contractors, to rebuild or remodel a residence according to prepared plans and specifications and for a stated price. According to the plans, and as a part of the contract, tile was to be furnished and put in the kitchen, bathrooms, sun room, and breakfast room. This building contract stipulated that C. R. Miller should have the right to "select the tile and hardware and fixtures" that were to go into the house. The cost of the tile selected was not to exceed the price of $2,200, and if it did, then C. R. Miller, as he admitted, was

to pay the greater price, and if less than $2,200, then C. R. Miller was to receive credit or refund in the difference of the amount.

In the latter part of October the work on the residence had progressed to the point of putting in the tile, and C. R. Miller undertook to make his selection of the tile to be used. After visiting tile firms in Dallas and Waco, the Good Marble & Tile Company of Fort Worth was finally agreed upon to furnish the tile according to the plans and specifications. On October 25th the following requisition was sent to and received by the Good Marble & Tile Company, viz.:

"Requisition

"Churchill-Humphrey Company

"Gen. Contractors and Engineers

"Construction Finance

"207 Magnolia Bldg.

"Order No. 363

"Dallas, Tex., Oct. 25, 1926
"Job No.          Miller Res.
"Lang & Witchell.
"M. Good Marble & Tile Company,
"Fort Worth, Texas.

"Enter our order for the following and ship to Churchill-Humphrey Co., Inc., 5012 Swiss Ave., Dallas, Texas.

"(Here follows description.)

"Furnish and install all tile, terrazzo and slate floors, or tile substitutes, in accordance with the plans and specifications of Lang & Witchell, Architects, and in accordance with your agreement with Mr. and Mrs. C. R. Miller.

"It is our understanding that you have visited this building and know what material remains and also what new material is required to make a complete job, and that you will furnish the color of tile, trim, etc., of size and height selected by Mr. and Mrs. C. R. Miller and that you will complete this work in six weeks as per your agreement with Mr. and Mrs. C. R. Miller. The tile wainscoting is to be 6'0" high.

"Price $2500.00.

"Churchill-Humphrey Co.,

"By D. E. Humphrey [Signed]"

Mr. Miller admits that the original contract price was $2,500. Later, on November 8, 1926, the following proposal was sent to and received by Churchill-Humphreys Company:

"Good Marble & Tile Company

"Fort Worth, Tex. Nov. 8th, 1926.

"Churchill & Humphries,

"5112 Swiss Ave.,

"Dallas, Texas.

"Re Miller Residence Dallas, Texas.
"Gentlemen:

"Since submitting our original proposal in connection with the tile work on the above mentioned residence at Mrs. Miller's sugges-

tion several changes have been made effecting our original quotation, and we are, therefore, submitting today in detail our proposal based upon different selections of tiles made by Mrs. Miller.

"(Here follows description.)

"The above fixtures to be distributed throughout bathrooms wherever indicated by the owner.

"All of the above mentioned work set in place complete for the sum of two thousand nine hundred and nineteen ($2,919.00) dollars.

"Kitchen:

"We propose to furnish and install a 4'-3 tile wainscot to kitchen walls using a six inch blue bright glazed base, 4¼X4¼ white glazed wall tile and 6X2 blue bright glazed cap for the additional sum of two hundred and seventy five ($275.00) dollars.

"Kindly return one sign copy to us, retaining duplicate copy for your files.

"Yours very truly,

"Good Marble & Tile Company

"By H. G. Good."

On November 18, 1926, there was written on the proposal and returned to the Good Marble & Tile Company the following:

"Date 11—18—26

"Accepted          Churchill-Humphrey Co.

"By S. J. Churchill for Clarence Miller."

Mrs. Miller does not deny that these several changes had been made as stated in the proposal. There is evidence tending to show that Mr. Miller was furnished with a copy of the proposal setting out the price of $3,194. Mr. Miller, though, denies that he knew of that price until after the present suit was filed, and he further denied that he authorized Mr. Churchill to sign the proposal for him. On April 29, 1927, the following check was given:

"No. 599          Dallas, Texas, April 29, 1927.

"North Texas National Bank 32—11 Pay to the order of Good Marble & Tile Company $2090.35 two thousand and ninety & 35/100 dollars.

"[Signed]          C. R. Miller."

In ink across the top of check appears the following figures:

| | |
|---|---|
| Acct. | 2565.43 |
| less | |
| Plumber | 60.10 |
| Escrow | 350.00 |
| " | 65.00 |
| | 475.10 |
| | 2090.35 |

On reverse side of check appears the following:

"Covering Account, accord and satisfaction in full to date.

"Upon replacing colored tile $65.00 more to be paid.

"Plumbing bill of $60.10 deducted."

Mr. Good, for the Good Marble & Tile Company, indorsed that check and received the money thereon. At the time of giving this check, Mr. Miller claimed that the contract price was only $2,500, and Mr. Good for the Good Marble & Tile Company claimed that the contract price was $3,194. Mr. Miller further claimed that he was entitled to damages from the Good Marble & Tile Company for delay in furnishing the tile and to have the same installed promptly. Mr. Good denied that he was liable or responsible for the damages. There was evidence going to show that there was a delay in furnishing the tile, and there was evidence authorizing the jury to find, as they did do, there was not an unreasonable delay in providing the tile for the building on the part of the Good Marble & Tile Company. There is evidence which would authorize a jury to find that the Good Marble & Tile Company complied with their agreement in furnishing and installing the kind and colors of tile which they agreed to deliver and provide. There was much correspondence between the parties showing and explaining the existence of the delays in shipping the tile. At the time Mr. Miller first gave the check to Mr. Good, it was made payable to the order of Good Marble & Tile Company and the contractors, Churchill-Humphreys Company. Mr. Good took the check to the Churchill-Humphreys Company, who refused to indorse it, whereupon Mr. Good returned the check to Mr. Miller, and then Mr. Miller called Mr. Humphreys and induced him to accept $350 in settlement of a damage claim of the Churchill-Humphreys Company. Afterwards the check was changed to read as above set out and having the notation on the back of it. Mr. Good denied that he was liable for any damages. It is unnecessary to set out all the evidence in detail. It is sufficient that the jury was authorized to find that the proposal in evidence of $3,194 was known and authorized by Mr. C. R. Miller in view of the fact that there was some evidence that a copy was given him and he stated that he was to be responsible and pay for the tiling in amounts above $2,200 in the event the price of the tiling was above $2,200.

We have carefully considered all the other assignments of error, and think each of them should be overruled.

The judgment is affirmed.

## On Motion for Rehearing.

Upon a reconsideration of the record, we have concluded that we were in error in not sustaining the assignment of error complaining of the refusal to give peremptory instruction to the jury to return a verdict in favor of the appellant. We have concluded that the evidence conclusively shows that there was a real dispute between the parties which was grounded on facts sufficient to furnish a basis

for applying the doctrine of accord and satisfaction. C. R. Miller tendered his check to the Good Marble & Tile Company upon condition that it be accepted in full payment, and the Good Marble & Tile Company accepted it with the notation appearing on it that it was in full satisfaction of the debt and cashed the same. There is an absence of any allegation and evidence that the check was given in ignorance of its purport or in circumstances constituting duress, fraud, or mistake.

The appellant denied liability on the contract upon which the demand in this suit was based, claiming that the debt was not his. He denied that the price stipulated in the contract was the price which he and the Good Marble & Tile Company had agreed on. He repeatedly claimed that he had been damaged in the sum of $300 by the delay of the Good Marble & Tile Company in failing to complete the contract of installing the tiling in the house within the time that he had been told by the Good Marble & Tile Company that it would be completed. He further contended that this delay was due entirely to the failure of the Good Marble & Tile Company to promptly and properly perform the services it had contracted to perform in installing the tiling. He also claimed that the tiling in one of the bathrooms in the house was not of the kind and quality called for in the contract and should be replaced with the proper kind and quality. He claimed the right to deduct or withhold the sum of $65 until that replacement was made; that replacement had never been made, and the tiling objected to and admitted to be a different kind and quality was still there. He claimed that a plumber's bill for repairing a water pipe which had been damaged by an employee of the Good Marble & Tile Company, in preparing the floor of the bathroom for laying the tile, had been charged to him, and for which he was not responsible. All of the above items and counterclaims were fully discussed between the appellant Miller and Mr. Good of the Good Marble & Tile Company in April, 1927, when the check in evidence was given. We find no evidence upon which the jury could fairly conclude that the appellant Miller's claim at the time the check was given was insincere and simulated for the purpose of obtaining a reduction in the price. It is believed that this court should hold, as a matter of law, that the settlement was fairly made and is binding on the parties. Root & Fehl v. Murray Tool Co. (Tex. Com. App.) 26 S.W.(2d) 189; 1 Ruling Case Law pp. 194, 195.

The former judgment of affirmance is therefore set aside, and the judgment of the district court so far as between C. R. Miller and the Good Marble & Tile Company is reversed, and judgment here rendered in favor of C. R. Miller that the Good Marble & Tile Company take nothing in its cross-action against

C. R. Miller; the Good Marble & Tile Company to pay the costs of appeal and all costs in the trial court incurred by C. R. Miller.